## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **DAWN KATSOULIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-00535-O-BP** |
| | § | |
| **KELLER INDEPENDENT** | § | |
| **SCHOOL DISTRICT, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) that Defendants Keller Independent School District ("KISD"), Lindsay Holloman, Leslie Weston, and Valerie Wolfenkoehler (collectively "Defendants") filed on September 2, 2025; Response that Dawn Katsoulis filed on September 23, 2025; and the Reply that Defendants filed on October 7, 2025. ECF Nos. 26, 28, 30. Based upon a full review of the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** Defendants' Motion to Dismiss (ECF No. 26) in part and **DISMISS** Counts 7 and 8 of Katsoulis' Second Amended Complaint without prejudice under Federal Rule of Civil Procedure 12(b)(1), **DISMISS** Counts 2-4, and 11 with leave to amend under Federal Rule of Civil Procedure 12(b)(6), and **DISMISS** Counts 5, 6, and 12 under Federal Rule of Civil Procedure 12(b)(6). Chief Judge O'Connor should not dismiss Counts 1, 9, and 10 of the Second Amended Complaint.

## I.     BACKGROUND

*Pro se* Plaintiff Katsoulis sues Defendants for various violations of state and federal law

related to her minor child's education. ECF No. 25. Her Second Amended Complaint contains twelve numbered counts detailing the alleged violations. *Id.* at 11-21. She claims her son's school did not provide him with assessments, services, or accommodations after he suffered "explosive outbursts" in response to bullying. *Id.* at 5. She argues that the school's delay in providing her son necessary support deprived him of his right to a Free Appropriate Public Education ("FAPE"). *Id.* at 13-15.

She also alleges retaliation in response to her exercise of her First Amendment rights, interference with her Fourteenth Amendment Due Process and Equal Protection rights, malicious prosecution and abuse of process, defamation, invasion of privacy, violation of the Individuals with Disabilities Education Act ("IDEA"), disability discrimination, "Monell Liability," failure to train, failure to supervise, and negligence. ECF No. 25 at 11-20. On September 2, 2025, Defendants moved to dismiss Katsoulis' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 26.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because "[f]ederal courts are courts of limited jurisdiction[, t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Article III's case-or-controversy requirement imposes an 'irreducible constitutional minimum of standing.'" *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To satisfy Article III standing, a plaintiff must show: (1) injury in fact; (2)

causation; and (3) redressability. U.S. Const. art. 3, § 2, cl. 1; *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* Dismissal for lack of subject matter jurisdiction "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

**B.    Rule 12 (b)(6) Standard**

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Each claim must contain "a short and plain statement . . . showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Bell Atl. Corp.*, 550 U.S. at 547). Rule 12(b)(6) is a "deferential standard" and serves as a "gate, not a gauntlet." *Arzamendi v. Hegseth*, No. 24-10557, 2025 WL 2978447, at *8 (5th Cir. Oct. 22, 2025) (Willett, J., concurring in and part dissenting in part) (citing *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024)).

Katsoulis is proceeding *pro se*. Courts liberally construe a *pro se* party's pleadings and take

all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

## III.    ANALYSIS

### A.    The Court should dismiss without prejudice the claims Katsoulis asserts on her son's behalf.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. But a party "cannot be represented by a nonlawyer," because § 1654 "does not include the phrase, 'or by a nonlawyer.'" *Raskin ex rel. JD v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 283 (5th Cir. 2023) (quoting *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998); *see also Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978) ("individuals not licensed to practice law by the state may not use the 'next friend' device as an artifice for the unauthorized practice of law."); *McPhail v. United States*, No. 5:22-cv-253-H-BQ, 2022 WL 20510185, at *4 (N.D. Tex. Dec. 29, 2022) ("[T]o proceed '*pro se* means to appear for one's self,' and therefore 'a person may not appear on another person's behalf in the other's cause.'" (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)), *rec. adopted*, 2023 WL 5216501 (N.D. Tex. Aug. 14, 2023).

However,

> the right to proceed *pro se* under § 1654 is not limited to cases where
> the *pro se* party is a named plaintiff. The statute provides for *pro se*
> representation in any case that is a party's "own." This language is
> rooted in the Judiciary Act of 1789, which said that "parties may
> plead and manage their own causes personally or by the assistance
> of counsel." At the Founding, "own" meant "belonging to" oneself,
> and it means the same thing today. Accordingly, for a person to
> invoke § 1654, the only requirement is that the case [s]he seeks to
> prosecute must belong to h[er].

*Raskin*, 69 F.4th at 283 (cleaned up); *accord Iannaccone*, 142 F.3d at 558.

"[A] *pro se*, non-lawyer parent or guardian may not represent the interests of her minor child." *Chatman v. Miss. High Sch. Athletics Ass'n*, 552 F. App'x 335, 337 (5th Cir. 2014). "[A] party cannot represent her child unless the child's case is the parent's 'own.'" *Santos v. Rhodes*, No. 3:23-cv-2366-S-BN, 2024 WL 4858585, at *1 (N.D. Tex. Nov. 20, 2024) (internal citations omitted). And a "parent seeking to represent a child bears the burden of showing that federal or state law authorizes her to do so." *Id*. (footnote omitted). That is because, "[w]ithout some federal or state law designating [the child's] claims as belonging to [the parent], the traditionally recognized 'common-law backdrop' applies, which is that non-attorneys cannot litigate the interests of others under 28 U.S.C. § 1654." *Id*. (footnote omitted).

Where a parent plaintiff does not "establish that under § 1654, federal or state law authorizes her to proceed *pro se* on behalf of her children," *Raskin*, 69 F.4th at 287, courts have dismissed without prejudice the claims of the minor plaintiff. *See, e.g., Davis v. Logan*, No. 4:24-cv-15-O-BP, 2024 WL 4627646, at *7 (N.D. Tex. Oct. 7, 2024), *rec. adopted*, 2024 WL 4626085 (N.D. Tex. Oct. 30, 2024); *see also Clark v. City of Pasadena*, No. 4:23-cv-04050, 2024 WL 4354819, at *4 (S.D. Tex. Sept. 30, 2024) (dismissing under Federal Rule of Civil Procedure 12(b)(1) because the plaintiff "did not establish that 'federal or state law authorizes h[er] to proceed *pro se* on behalf of h[er] children.'").

Katsoulis attempts to proceed *pro se* as to her son's claims in Counts 7 and 8 and alleges violations of the IDEA and Americans with Disabilities Act and disability discrimination. ECF No. 25 at 17. She seeks compensatory and punitive damages. *Id*. at 21. The Fifth Circuit has held that "those not licensed to practice law may not represent the legal interest of others." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016). Katsoulis pleads no facts to show that she is a lawyer, nor has she "affirmatively and distinctly" alleged under § 1654 facts or authority to show that she is able to represent her son in this Court for violations of the IDEA or other state or federal statutes. *Raskin,* 69 F.4th at 287. Consequently, she has not met her "burden of showing that federal or state law authorizes" her to proceed on behalf of her son, and she cannot represent the legal interests of others. *Santos*, 2024 WL 4858585, at *1. Accordingly, dismissal is appropriate for claims that Katsoulis brings on behalf of her son or that she asserts directly as the mother or son's representative because she cannot proceed *pro se* in this case on behalf of anyone other than herself.

Under these circumstances, Katsoulis has not established that she is able to proceed *pro se* on behalf of her son under 28 U.S.C. § 1654. Therefore, she lacks standing to bring these federal claims on her son's behalf. Dismissal without prejudice under Rule 12(b)(1) is appropriate as to Counts 7 and 8 because the Court lacks subject matter jurisdiction. *Ramming*, 281 F.3d at 161; *Hitt*, 561 F.2d at 608.

**B.     The Court should dismiss Katsoulis' tort claims she asserts on her own behalf.**

The Texas Tort Claims Act ("TTCA") "provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code § 101.023). "The tort liability of the state of Texas and its political subdivisions . . . is strictly limited. *Barnes v. Dallas Park & Recreation Dep't*, No. CIV.A.3:98-CV-1186-G, 1999 WL 378136, at *2 (N.D.

Tex. June 7, 1999) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)). "Public school districts are generally entitled to governmental immunity from liability and suit." *El Paso Educ. Initiative, Inc. v. Amex Properties*, LLC, 602 S.W.3d 521, 526 (Tex. 2020). However, "[t]he TTCA provides a limited waiver of immunity for certain suits against Texas governmental entities." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462 (5th Cir. 2010).

In 2003, the legislature added a "comprehensive election-of-remedies provision," in TTCA § 101.106. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 536 (Tex. 2017). Under the provision, a plaintiff must "decide on a theory of tort liability before suit is even filed," and "'decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable.'" *Id.* (citing *Garcia*, 253 S.W.3d at 657).

The plaintiff's decision serves as an "irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone." *Garcia*, 253 S.W.3d at 657. When a plaintiff sues "both a governmental unit and its employees in tort . . . § 101.106(e) requires that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Rios*, 542 S.W.3d at 537. As a result, "this requirement effectively makes a plaintiff's apparent nonchoice an election to sue only the government." *Id.*

Here, in Counts 3, 5, and 8 of her First Amended Complaint, Katsoulis sued all Defendants in tort for defamation, invasion of privacy, and negligence. ECF No. 19 at 11, 13, 15. This "apparent nonchoice" served as an irrevocable election to sue "only the government" in tort for these violations, despite Katsoulis' later Second Amended Complaint that sought to sue only the individual Defendants in tort. *Rios*, 542 S.W.3d at 537, ECF No. 25 at 15, 16, 20. Therefore, dismissal is appropriate.

**C.      Katsoulis has sufficiently stated a § 1983 claim against KISD for its alleged retaliation and failure to train, but not for Due Process or Equal Protection violations.**

Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any [law] subjects [] any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Katsoulis asserts five § 1983 claims against KISD based on distinct policies or customs.

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)). An official policy is either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] . . . or by an official to whom the [district] ha[s] delegated policy-making authority; or
> 2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

A court must determine whether each policy or custom, identified by a plaintiff as the alleged cause of a constitutional violation, is facially constitutional or unconstitutional. *Piotrowski*, 237 F.3d. at 579. If facially constitutional, then the policy can only "support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v.*

8

*Brown*, 520 U.S. 397, 409 (1997)). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* (quoting *Bd. of Cnty. Com'rs of Bryan Cnty.*, 520 U.S. at 409).

While courts in this circuit are split on the level of specificity required for pleading municipal liability claims, several courts follow a "common-sense approach" that requires "only minimal factual allegations . . . at the motion to dismiss stage." *E.G. by Gonzalez v. Bond*, No. 1:16-cv-0068-BL, 2016 WL 8672774, at \*5 (N.D. Tex. Sept. 9, 2016), *rec. adopted as modified sub nom. E.G. v. Bond*, No. 1:16-cv-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017) (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-44 (S.D. Tex. 2011)). This approach relies on *Iqbal*'s instruction that courts draw on their judicial experience and common sense, and on the fact that, in the municipal liability context, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. . . ." *Id.*

"Determining who is a policymaker is a matter of law, requiring a court to identify those 'officials whose decisions represent the official policy.'" *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 359 (5th Cir. 2014) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The parties do not dispute that the KISD Board of Trustees is the proper policymaker under § 1983. ECF No. 25 at 24; No. 28 at 15; *see also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir. 1993) (citing Tex. Educ. Code Ann. § 23.26(b)) ("Texas law provides that the Board of Trustees is responsible for determining school policy.").

1.    <u>Katsoulis has stated a claim against KISD for its alleged retaliation.</u>

In Count 1, Katsoulis claims that KISD retaliated against her for the exercise of her First Amendment free speech rights, including filing false reports with Child Protective Services

9

("CPS"), banning her from school property, and excluding her from meetings. ECF No. 25 at 11. She claims in Count 9 that KISD maintained policies or customs of retaliation and misusing CPS reports for impermissible purposes. To proceed on a First Amendment retaliation claim, plaintiffs must present facts showing "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused . . .  injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 257 (5th Cir. 2002).

At this stage, Katsoulis must only plead "minimal factual allegations" that the alleged retaliatory actions of KISD staff were the result of an official policy. Katsoulis claims that there were "multiple incidents" of school officials making malicious and false reports to CPS. ECF No. 25 at 11. She alleges that the temporal proximity of the escalating hostility and remarks provide evidence that the Defendants' actions were retaliatory. *Id.* Although Katsoulis does not identify an internal KISD policy that led to this treatment, this does not automatically defeat her claim at the motion to dismiss stage. *Bond*, 2016 WL 8672774 at *5. Katsoulis has met her burden to plead minimal factual allegations that the retaliation she suffered was the result of an official KISD policy.

        2.      <u>Katsoulis has not stated a claim against KISD for its alleged violations of the Due Process and Equal Protection clauses of the 14th Amendment.</u>

In Counts 2, 3 and 9, Katsoulis claims that KISD violated her rights to Due Process and Equal Protection under the 14th Amendment. ECF No. 25 at 12-13, 18. She asserts that KISD deprived her of her parental rights and discriminated against her and her son because of their disabilities. *Id.* at 13. Katsoulis does not provide factual allegations that these violations resulted from a KISD official policy, as required to establish municipal liability against a school district

under *Monell*. She only summarily claims without factual support in related Count 9 that KISD "maintained a policy of allowing disability-based discrimination." ECF No. 25 at 18.

Katsoulis does not provide the minimal factual allegations necessary under *Monell* regarding the alleged violations of Due Process and Equal Protection. As a result, Katsoulis has not stated a claim upon which relief can be granted, and the Court should dismiss her claims against KISD in Counts 2, 3, and 9.

### 3.    Katsoulis has stated a claim against KISD for its alleged failure to train.

To state a failure-to-train theory of municipal liability, a plaintiff must plead facts demonstrating: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the infringements of rights. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). "Proof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such lack of training can constitute deliberate indifference." *Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008) (citations and quotation marks omitted) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458 (5th Cir. 2001); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

Generally, the plaintiff must "demonstrate that the municipality or supervisor had notice of a pattern of prior acts fairly similar to what ultimately transpired." *Id.* The focus of an inadequate training claim is on the training program, and not on an individual officer who, though adequately trained, made a mistake or could have been better supervised or disciplined. *E.G. by Gonzalez*, No. 1:16-cv-0068-BL, 2016 WL 8672774, at *11.

Katsoulis claims that KISD did not "adequately train staff on IDEA compliance, lawful

CPS reporting, and disability rights[,]" which caused the constitutional violations and statutory violations she claims. ECF No. 25 at 19. She asserts more than a single instance of lack of adequate supervision causing constitutional First Amendment violations. *Lewis*, 289 F. App'x at 772. She also asserts that KISD had notice of the pattern of conduct because other violations had taken place, and she reported these violations to KISD on several occasions. *Id.* at 8, 10. She claims KISD was deliberately indifferent in instituting and maintaining its training policy. *Id.* at 19. Katsoulis stated sufficient facts to demonstrate that KISD "had notice of a pattern of prior acts fairly similar to what ultimately transpired." *Lewis*, 289 F. App'x at 772.

### D. Katsoulis sufficiently stated a claim for retaliation against the individual Defendants, but not for violations of Equal Protection, Due Process, malicious prosecution, abuse of process, or failure to intervene.

#### 1. Katsoulis has stated a retaliation claim against the individual Defendants.

In Count 1, Katsoulis claims that Defendants retaliated against her for the exercise of her First Amendment free speech rights, including filing false reports to CPS, banning her from school property, and excluding her from meetings. ECF No. 25 at 11. Katsoulis claims that she was engaged in the constitutionally protected activity of advocating for her child's best interests in his education. ECF No. 25 at 11. She asserts that this constitutionally protected advocacy motivated the Defendants to retaliate against her, evidenced by retaliatory remarks that Defendants made shortly after she exercised her rights. *Id.* Finally, she alleges that the injuries she suffered of reputational harm, emotional distress, and investigations would chill a person from continuing to engage in the constitutionally protected activity. *Id.*

Katsoulis plausibly sets forth a claim upon which the Court could grant relief beyond the speculative level. *Bell Atl. Corp.*, 550 U.S. at 555. She outlines the retaliatory actions that Defendants took, specifically describes how her protected activities motivated the retaliation, and explains how the injuries she suffered would chill the speech of a person or ordinary firmness. At

this stage, she has met her burden to state a claim for retaliation.

> 2.    <u>Katsoulis has not stated a claim against the individual Defendants for their alleged violations of the Due Process clause of the 14th Amendment.</u>

In Count 2, Katsoulis claims that the individual Defendants violated her right to Due Process under the 14th Amendment. ECF No. 25 at 12-13. She asserts that they deprived her of her parental rights and discriminated against her and her son because of their disabilities. *Id.* at 13.

Under the Due Process Clause of the 14th Amendment, a plaintiff "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment . . . and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (internal citations omitted).

Katsoulis does not adequately assert a recognized liberty or property interest as required, instead only pleading violations of her "parental rights" generally. She also does not plead facts to show how individual Defendants intentionally or recklessly deprived her of this liberty interest under the color of state law. Instead, she details several instances of bad behavior by the Defendants that she claims violated her parental rights. This is insufficient. Because she has not stated a plausible claim upon which relief can be granted, the Court should dismiss her claims in Count 2.

> 3.    <u>Katsoulis has not stated a claim against the individual Defendants for their alleged violations of the Equal Protection clause of the 14th Amendment.</u>

In Count 3, Katsoulis claims that the individual Defendants violated her right to Equal Protection under the 14th Amendment. ECF No. 25 at 13-14. She asserts that they discriminated against her and her son based on their disabilities. *Id.* Further, Katsoulis claims that the Defendants treated her differently than non-disabled families through the filing of false CPS reports and

"statistically." *Id.*

To state an Equal Protection claim, "the plaintiff must establish (1) [s]he was 'intentionally treated differently from others similarly situated' and (2) there was no rational basis for any such difference . . . 'isolated events that adversely affect individuals' presumptively do not violate [E]qual [P]rotection." *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (citing *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006), *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)).

Katsoulis does not meet this standard. She asserts that the Defendants intentionally treated her differently because she had a disability and that this treatment differed from non-disabled families similarly situated. ECF No. 25 at 13. The only facts she pleads for this allegation are that Defendants "fail[ed] to provide communications other than email," "claim[ed] that Plaintiff's disability is not real," and made a "false CPS report." *Id.* at 7-8.

Katsoulis does not provide any factual support to show that the negative treatment she faced was due to her disability. She also does now show that she was "intentionally treated differently from others similarly situated." *Whiting*, 451 F.3d at 348 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Finally, she does not plead facts showing that the ill treatment she received was anything more that an "isolated event[]." *Wilson*, 667 F.3d at 599 (citing *Gamza*, 619 F.2d at 453). Resultantly, Katsoulis has not pleaded a claim upon which relief may be granted.

4.    Katsoulis has not stated a claim against the individual Defendants for malicious prosecution or abuse of process.

In Count 4, Katsoulis sues Defendants first for malicious prosecution, seemingly asserting a Fourth Amendment violation. *See Espinal v. City of Hous.*, 96 F.4th 741, 748 (5th Cir. 2024) (analyzing a claim of malicious prosecution under the Fourth Amendment). "[T]he Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim for malicious prosecution under § 1983,

> a plaintiff must allege the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal*, 96 F.4th at 748.

Katsoulis' claim for malicious prosecution contains no facts supporting any of the required elements. ECF No. 25 at 14. She contends that the Defendants "knowingly made false CPS reports" alleging neglect and abuse without probable cause. *Id.* She contends that these false reports amount to malicious prosecution. *Id.* Katsoulis has not stated a malicious prosecution claim because she did not allege any facts that show the required elements.

Also in Count 4, Katsoulis sues Defendants for abuse of process. ECF No. 25 at 14.

> [T]o succeed on a claim for abuse of process, a plaintiff must show that "(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act."

*Hammervold v. Blank*, 3 F.4th 803, 812 (5th Cir. 2021) (citing *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)). Katsoulis did not identify actions that the Defendants took that satisfy any of these requirements. Instead, she claims in conclusory fashion that Defendants abused process by making false reports to CPS. ECF No. 25 at 14. Katsoulis does not meet her burden. Accordingly, dismissal is appropriate because Katsoulis has not stated a claim against the individual Defendants for malicious prosecution nor abuse of process.

5.      Katsoulis has not stated a claim against the individual Defendants for failure to intervene.

In Count 11, Katsoulis alleges that the individual Defendants "failed to take reasonable steps to intervene, despite having both the authority and opportunity to do so." ECF No. 25 at 20. The Fifth Circuit has found that bystander liability for a failure to intervene exists under § 1983 when the official, who is present at the scene, "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted).

However, other than her conclusory statement, Katsoulis does not plead any facts supporting her claim. She does not state which individual Defendants failed to intervene or what constitutional violations occurred of which they were aware. Katsoulis does not explain what reasonable steps the Defendants could have taken to intervene nor how they had the authority or opportunity to do so. Dismissal is appropriate because Katsoulis does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 547.

**E.      Whether dismissals should be with or without leave to amend.**

The decision to allow amendment of the pleadings is within the sound discretion of the Court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, the Court considers: undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982). "At some point, a court must decide that a plaintiff has had fair opportunity to make her case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir. 2003).

1.    The Court should dismiss Katsoulis' claim on her son's behalf without leave to amend.

Amendment of Katsoulis' claims asserted on her son's behalf would be futile because Katsoulis impermissibly attempts to proceed *pro se* on someone else's behalf. Amendment cannot cure this deficiency. Therefore, the dismissal of Counts 7 and 8 should be without leave to amend.

2.    The Court should dismiss Katsoulis' tort claims without leave to amend because KISD has governmental immunity.

In the context of school districts, the TTCA waives governmental immunity only in the context of motor vehicles. Tex. Civ. Prac. & Rem. Code § 101.051 (Vernon 2025). KISD is immune from Katsoulis' tort claims because they do not involve negligence arising from operation of a motor vehicle. As a result, the Court should dismiss Katsoulis' tort claims contained in Counts 5, 6, and 12. *White v. City of Dallas*, No. 3:12-CV-2145-O, 2013 WL 4475738, at *1 (N.D. Tex. Aug. 21, 2013) (dismissing plaintiff's tort claims against the City of Dallas with prejudice because the city was "immune from state law tort claims under [] the TTCA"). The dismissal should be without leave to amend because further amendment of the complaint would be futile due to KISD's governmental immunity and the TTCA's election of remedies provision.

3.    The Court should dismiss Katsoulis' Equal Protection and Due Process claims against KISD with leave to amend.

Although Katsoulis does not state a claim against KISD upon which relief can be granted for Equal Protection and Due Process violations, it does not appear that she has pleaded her best case or that further amendment would be futile. Accordingly, the Court should grant Katsoulis leave to file a Third Amended Complaint that addresses the deficiencies noted in these findings, conclusions, and recommendation within fourteen days after Chief Judge O'Connor enters his order on the findings, conclusions, and recommendation or such other time that he sets.

4.    <u>The Court should dismiss Katsoulis' claims against the individual Defendants for Equal Protection and Due Process violations, malicious prosecution, and failure to intervene with leave to amend.</u>

Although Katsoulis does not state a claim against the individual Defendants upon which relief can be granted, the Court does not conclude that she has pleaded her best case or that further amendment would be futile. Accordingly, the Court should grant Katsoulis leave to file a Third Amended Complaint that addresses the deficiencies noted in these findings, conclusions, and recommendation within fourteen days after Chief Judge O'Connor enters his order on the findings, conclusions, and recommendation or such other time that he sets.

## IV.    CONCLUSION

Katsoulis may not proceed *pro se* on behalf of her son in pursuing his claims, and therefore the Court should dismiss them. Katsoulis has sufficiently stated a § 1983 claim against KISD for its alleged retaliation and failure to train, but not for Due Process or Equal Protection violations. Finally, Katsoulis has sufficiently stated a claim for retaliation against the individual Defendants, but not for violations of Equal Protection and Due Process, malicious prosecution, abuse of process, or failure to intervene.

Accordingly, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** Defendants' Motion to Dismiss in part (ECF No. 26), **DISMISS** Counts 7 and 8 of Katsoulis' Second Amended Complaint without prejudice under Federal Rule of Civil Procedure 12(b)(1), **DISMISS** Counts 2-4, and 11 with leave to amend under Federal Rule of Civil Procedure 12(b)(6), and **DISMISS** Counts 5, 6, and 12 under Federal Rule of Civil Procedure 12(b)(6). Chief Judge O'Connor should not grant Defendants' Motion to Dismiss as to Counts 1, 9, and 10 of the Second Amended Complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on November 18, 2025.


Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE